Filed 1/14/25  P. v. Ramirez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>ANGEL J. RAMIREZ,<br><br>       Defendant and Appellant. | B333307<br><br>(Los Angeles County<br>Super. Ct. No. NA063581) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Richard M. Goul, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Angel J. Ramirez appeals from a postjudgment order denying his Penal Code former section 1170.95 (now section 1172.6)[1] petition after a jury found him guilty of two counts of attempted murder. Ramirez contends the superior court erred in denying his petition at the prima facie stage because the jury instruction on the kill zone theory "was essentially equivalent to the natural and probable consequences doctrine." We reject his contention and affirm the superior court's denial.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *Evidence at Trial*[2]

"On the evening of November 5, 2004 15-year-old Tony Phim and 13-year-old Sophi San were riding bicycles in Long Beach after visiting a friend's house when Phim saw two young men, also on bicycles, appear from behind or between a car. One of the young men asked, 'Where are you from?' Phim replied, 'Nowhere.' At that point, one of the two young men began shooting. Phim, who had started to ride away when the shots were fired, was hit in the hip and fell to the ground. The shooter also pointed his gun at San's head and fired two or three times, but did not hit San. The shooter called out, 'Fuck Nips' and rode

---

[1]    Undesignated statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

[2]    We provide the facts for context and background and do not rely on them in deciding the merits of this appeal. (See *People v. Flores* (2022) 76 Cal.App.5th 974, 988.)

off.  Phim also heard someone say 'CLB,' which is a clique of the East Side Longo gang.

"When interviewed by police officers, Phim . . . said he thought he recognized the shooter from a confrontation at MacArthur Park two weeks earlier.  Phim selected Ramirez's photograph from a group of photographs shown to him . . . .  At trial, Phim identified Ramirez as the person who shot him.  San also selected Ramirez's photograph from a group of photographs shown to him by investigating officers and indicated he, too, recognized the person from MacArthur Park.  San added he believed the person was a member of the East Side Longo gang.

"Several residents of the neighborhood where the shooting took place heard gunshots and immediately afterward saw an individual in dark baggy clothing with a cap or hood riding a chrome colored bicycle.  One of those residents, Jose Rodriguez, ran outside after he first heard gunfire and saw a Hispanic male on a BMX-style bicycle firing shots at a small Asian male, who was also on a BMX-style bicycle.  The shooter, wearing a hooded sweatshirt or jacket, rode off on his bicycle, using one hand to put the gun back into his pocket while attempting to steer with his other hand.  The shooter crashed into a fence, re-positioned himself, turned around and rode back past Phim.  The shooter kept riding and joined a second male on a black bicycle. . . .

"When Rodriguez spoke to police officers that evening, he reported he had not seen the shooter's face although he indicated the shooter's hooded sweatshirt had dropped down at one point but was quickly pulled back up.  Rodriguez described the shooter as about five feet, nine inches tall, weighing approximately 150 pounds and 16 to 18 years old.  The second man on a bicycle, according to Rodriguez, was similar to the shooter in height and

age but somewhat heavier. Later that night Rodriguez told his girlfriend he had recognized the shooter from the neighborhood but was not going to say anything because he did not want to go to court. Rodriguez also told the police officers he did not want to testify.

"On November 10, 2004 two Long Beach police officers showed Rodriguez a group of photographs. Rodriguez selected Ramirez's photograph as looking like the shooter, but noted his hairstyle at the time of the shooting was more like that of a person in a different photograph. In December 2004 Rodriguez told a deputy district attorney and detectives from the district attorney's office he saw the shooting and recognized Ramirez as the shooter but did not want to identify him in court. Rodriguez expressed concern for his family's and his own safety.

"At Ramirez's initial trial, which ended in a mistrial after the jury declared it was deadlocked, Rodriguez would not identify the shooter. When asked why, Rodriguez refused to answer the question. In a subsequent interview with the deputy district attorney who prosecuted Ramirez's retrial, Rodriguez again acknowledged he saw the shooting and recognized Ramirez as the shooter. However, he said he did not want to testify, explaining he was a former gang member and felt he would be in danger of retaliation by his former gang if he testified against other gang members. He added he understood gang members are housed together in prison and he feared his cooperation with the police could be communicated to his former gang. Nonetheless, at the retrial Rodriguez identified Ramirez as the shooter." (*People v. Ramirez* (Nov. 1, 2006, B186734) 2006 WL 3086277, at pp. *1-2 [nonpub. opn.] (*Ramirez*).)

4

B.    *Relevant Jury Instructions*

The trial court instructed the jury on attempted murder (CALJIC No. 8.66), the kill zone theory (CALJIC No. 8.661), and aiding and abetting (CALJIC Nos. 3.00-3.01).

CALJIC No. 8.66 provided, in relevant part:  "In order to prove attempted murder, each of the following elements must be proved; [¶] 1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2. The person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."

Former CALJIC No. 8.66.1 (7th ed., 2005) provided:  "A person who primarily intends to kill one person, may also concurrently intend to kill other persons within a particular zone of risk.  This zone of risk is termed the 'kill zone.'  The intent is concurrent when the nature and scope of the attack, while directed at a primary victim, are such that it is reasonable to infer the perpetrator intended to kill the primary victim by killing everyone in that victim's vicinity. [¶] Whether a perpetrator actually intended to kill the victim, either as a primary target or as someone within a 'kill zone' zone of risk is an issue to be decided by you."

Former CALJIC No. 3.00 (4th ed., 1984) provided, in relevant part:  "Persons who are involved in committing or attempting to commit a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is equally guilty.  [¶] Principals include:  [¶] 1. Those who directly and actively commit or attempt to commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission or attempted commission of the crime."

5

CALJIC No. 3.01 provided, in relevant part: "A person aids and abets the commission or attempted commission of a crime when he or she: [¶] (l) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] (3) By act or advice aids, promotes, encourages or instigates the commission of the crime."

C.     *Verdicts, Sentence, and Appeal*

"The jury convicted Ramirez of the attempted murder of Phim (count 1) (Pen. Code, §§ 664, 187, subd. (a)) and found true the special allegations a principal had personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subds. (b), (c), (d), & (e)(1)) and the attempted murder of San (count 2) (§§ 664, 187, subd. (a)) with true findings a principal had personally and intentionally discharged a firearm (§ 12022.53, subds. (b), (c) & (e)(1)). Ramirez admitted the special allegation the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A)).

"The trial court denied probation and sentenced Ramirez on count 1 to the middle term of seven years, plus 25 years to life for the firearm-use enhancement under section 12022.53, subdivision (d). On count 2 the court sentenced Ramirez to a consecutive term of two years four months (one-third the middle term), and additionally imposed a 25-years-to-life firearm-use enhancement under section 12022.53, subdivision (d). The court stayed the additional section 12022.53 firearm-use enhancements on both counts." (*Ramirez*, *supra*, 2006 WL 3086277, at p. *4.)

On direct appeal, this court modified the judgment to "reflect imposition of a six year eight month firearm-use

6

enhancement on count 2 (one-third of the 20-year enhancement provided by section 12022.53, subdivision (c)), rather than the 25-years-to-life enhancement under section 12022.53, subdivision (d)." (*Ramirez*, *supra*, 2006 WL 3086277, at p. *7.) Otherwise, we affirmed the judgment. (*Ibid.*)

D.    *Section 1172.6 Proceedings*

On August 19, 2022, Ramirez filed a former section 1170.95 petition for resentencing, and the superior court appointed counsel for Ramirez. The People filed an opposition, arguing the jury was not instructed on the natural and probable consequences doctrine. Ramirez's counsel filed a reply, contending that although the jury was not instructed on the natural and probable consequences doctrine, the instruction on the kill zone theory allowed the jury to convict Ramirez based on a theory of imputed malice. At a hearing, the trial court denied the petition. It reasoned that "challenges to the kill zone theory are not covered by [section] 1172.6 and those have to be covered through a writ of habeas corpus."

Ramirez filed a timely notice of appeal.

## DISCUSSION

A.    *Relevant Legal Principles*

Effective 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Reyes* (2023) 14 Cal.5th 981, 984; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and narrowed the felony-murder rule (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Curiel* (2023) 15 Cal.5th 433, 448-449 (*Curiel*); *People v. Strong*

7

(2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*)).  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on one's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e).  The latter provision now requires the People to prove that the defendant was the actual killer (§ 189, subd. (e)(1)); an aider and abettor to murder who had the intent to kill (§ 189, subd. (e)(2)); or a major participant in an underlying felony listed in section 189, subdivision (a), who acted with reckless indifference to human life as described in subdivision (d) of section 190.2.  (§ 189, subd. (e)(3); see *Curiel*, at p. 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868-869; *Strong*, at p. 708; *Gentile*, at pp. 842-843.)  Senate Bill No. 775 (2021-2022 Reg. Sess.) (SB 775) subsequently clarified the amendments to sections 188 and 189 also applied to attempted murder convictions.  (*People v. Coley* (2022) 77 Cal.App.5th 539, 544 (*Coley*).)

Under section 1172.6 "[a] person convicted of . . . attempted murder under the natural and probable consequences doctrine" may petition the superior court to vacate the conviction and be resentenced on any remaining counts if the petitioner could not now be convicted of attempted murder because of the changes to sections 188 and 189.  (§ 1172.6, subd. (a).)

If a section 1172.6 petition contains all the required information, the sentencing court must appoint counsel to represent the petitioner if requested.  (§ 1172.6, subd. (b)(1)(A), (b)(3); see also *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)  The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to

determine whether the petitioner has made a prima facie showing that the petitioner is entitled to relief. (§ 1172.6, subd. (c).) If the petitioner makes that showing, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the attempted murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c) & (d)(1).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *Curiel*, *supra*, 15 Cal.5th at p. 460.) The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971; see *Curiel*, at pp. 463-464.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.)

"Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*. ' "[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner,' " ' thereby deeming the petitioner ineligible." (*People v. Harden* (2022) 81 Cal.App.5th

9

45, 52; see *Curiel*, *supra*, 15 Cal.5th at p. 460; *Lewis*, *supra*, 11 Cal.5th at p. 971.) "We review de novo whether the trial court conducted a proper inquiry under section 1172.6, subdivision (c)." (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

B.    *Analysis*

As discussed, SB 1437 and SB 775 eliminated the natural and probable consequences doctrine as it relates to attempted murder. (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 193 [SB 775 "clarified SB 1437 by amending section [1172.6] to make clear the natural and probable consequences doctrine no longer supplies accomplice liability to attempted murder"].) Accordingly, section 1172.6 relief is available *only* for persons whose convictions for attempted murder could have been based on the natural and probable consequences doctrine. (§ 1172.6, subd. (a) ["A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition"]; *Coley*, *supra*, 77 Cal.App.5th at p. 548 [section 1172.6, subdivision (a)(1) "applies by its terms only to attempted murders based on the natural and probable consequences doctrine"]; *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 ["Following the passage of [SB] 775 in 2022, it is now clear that defendants . . . convicted of attempted murder are potentially eligible for relief under section 1172.6 if the conviction could have been based on the natural and probable consequences doctrine"].)

The trial court did not instruct Ramirez's jury on the natural and probable consequences doctrine. Instead, the court instructed on attempted murder, the kill zone theory, and direct

10

aiding and abetting.[3]  Accordingly, Ramirez is not eligible for relief under section 1172.6 on his attempted murder convictions as a matter of law.  (See *Coley*, *supra*, 77 Cal.App.5th at p. 548 ["The jurors in this case were not instructed on [the natural and probable consequences] doctrine. . . .  The court was not required to grant resentencing on this [attempted murder] count."]; *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied"].)

Although Ramirez concedes his jury was not instructed on the natural and probable consequences doctrine, he asserts the instruction on the kill zone theory (CALJIC No. 8.66.1) "was essentially equivalent to the natural and probable consequences doctrine."  We reject his argument.

"[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted." (*Gentile*, *supra*, 10 Cal.5th at p. 843.)  Culpability for the direct perpetrator's crime is therefore imputed to the accomplice based solely on the accomplice's participation in the separate target crime.  (*Id.* at pp. 843-844.)

In contrast, the kill zone theory is an express malice theory that has nothing to do with imputing culpability or aiding and abetting.  Rather, the kill zone or "concurrent intent" theory is a

---

[3]      "Direct aiding and abetting remains a valid theory of attempted murder after the enactment of [SB] 775."  (*Coley*, *supra*, 77 Cal.App.5th at p. 548.)

11

"theory for establishing the specific intent to kill required for conviction of attempted murder." (*People v. Canizales* (2019) 7 Cal.5th 591, 607 (*Canizales*)).  Under the theory, "a defendant may be convicted of the attempted murder of an individual who was not the defendant's primary target." (*Id*. at p. 596.)  "The kill zone theory permits a jury to infer a defendant's intent to kill an alleged attempted murder victim from circumstantial evidence (the circumstances of the defendant's attack on a primary target)." (*Id*. at p. 597; see *People v. Mumin* (2023) 15 Cal.5th 176, 193 (*Mumin*) ["a kill zone is an area which a defendant intentionally creates in order to kill all those within it to ensure the primary target's death"].)  To convict a defendant under the kill zone theory, the jury must find the "defendant intended to kill everyone in the kill zone as a means of killing the primary target." (*Canizales*, at pp. 607-608, fn. 5.)  The kill zone theory thus pertains to circumstances in which a jury may infer an intent to kill, but it does not dispose of the requirement that the jury find an intent to kill and instead allow the jury to impute malice.

The kill zone instruction given to Ramirez's jury provided: "A person who primarily intends to kill one person, may also concurrently intend to kill other persons within a particular zone of risk.  This zone of risk is termed the 'kill zone.'  The intent is concurrent when the nature and scope of the attack, while directed at a primary victim, are such that it is reasonable to infer the perpetrator intended to kill the primary victim by killing everyone in that victim's vicinity.  [¶]  Whether a perpetrator actually intended to kill the victim, either as a primary target or as someone within a 'kill zone' zone of risk is an issue to be decided by you."  (Former CALJIC No. 8.66.1.)

12

Contrary to Ramirez's contention, the jury was not instructed that "it did not need to find [Ramirez] had malice toward a particular victim so long as their harm was the natural and probable consequence of firing at a 'kill zone' where that victim was present." Rather, the kill zone instruction provided that the jury could only find Ramirez guilty of attempted murder if it found either he intended to kill the victim as the primary target, or he intended to kill the victim because that person was in another primary target's vicinity. Either way, the jury was instructed it had to find Ramirez intended to kill the victim. The jury was also instructed that it had to find Ramirez had "a specific intent to kill" in order to be guilty of attempted murder. (CALJIC No. 8.66.) And because the jury was not instructed on the natural and probable consequences doctrine, it was not introduced to the concept of imputing malice based on participation in a separate target offense, such as assault with a firearm. Accordingly, the jury would have no basis to believe that it could find Ramirez guilty of attempted murder based on his participation in some other crime.

Ramirez also contends the kill zone instruction given in his case was "invalidated" in *Canizales*, *supra*, 7 Cal.5th 591, but he does not explain how *Canizales* supports his contention that relief under section 1172.6 is appropriate here.[4] Even assuming the

---

[4] "[I]n *Canizales*, the Supreme Court limited application of the kill zone theory to correct the overbroad application of the theory by several Courts of Appeal." (*In re Rayford* (2020) 50 Cal.App.5th 754, 777, disapproved on other grounds in *Mumin*, *supra*, 15 Cal.5th at p. 203.) *Canizales* held the kill zone theory "may properly be applied only when a jury concludes: (1) the circumstances of the defendant's attack on a primary

kill zone instruction given in Ramirez's case is erroneous under *Canizales*, "the alleged error . . . has nothing to do with the 2018 and 2021 legislative changes that gave rise to section 1172.6's petition process." (*People v. Burns* (2023) 95 Cal.App.5th 862, 865; see *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 936-937.) To be eligible for relief under section 1172.6, Ramirez must show he can no longer be convicted of attempted murder "because of changes to Section 188 or 189 made effective [by SB 1437 and SB 775]." (§ 1172.6, subd. (a)(3).) But neither SB 1437 nor SB 775 made changes to the law to limit liability for attempted murder on a concurrent intent theory.

---

target, including the type and extent of force the defendant used, are such that the only reasonable inference is that the defendant intended to create a zone of fatal harm — that is, an area in which the defendant intended to kill everyone present to ensure the primary target's death . . . and (2) the alleged attempted murder victim [who was a secondary target] was located within that zone of harm. Taken together, such evidence will support a finding that the defendant harbored the requisite specific intent to kill both the primary target and everyone within the zone of fatal harm." (*Canizales, supra*, 7 Cal.5th at p. 607.)

Ramirez also cites *People v. Sek* (2015) 235 Cal.App.4th 1388, review granted July 22, 2015, S226721, to suggest the kill zone instruction in his case was flawed. However, that decision was depublished upon the California Supreme Court granting review before California Rule of Court, rule 8.1115(e) went into effect, and thus is no longer citable authority. (See *People v. Trevino* (2016) 1 Cal.App.5th 120, 125 fn. 6 [case could not be relied upon because "its precedential value was eradicated when the Supreme Court granted review. (See former Cal. Rules of Court, rule 8.1105(e)(1))."].)

If the kill zone instruction in Ramirez's case was erroneous under *Canizales*, he may raise that claim in a petition for writ of habeas corpus.[5] (See *In re Sambrano* (2022) 79 Cal.App.5th 724, 731-732, disapproved on other grounds in *Mumin*, *supra*, 15 Cal.5th at p. 209, fn. 11 [considering habeas petition seeking reversal of attempted murder convictions due to erroneous kill zone instruction]; *In re Lisea* (2022) 73 Cal.App.5th 1041, 1053 [same]; *In re Rayford*, *supra*, 50 Cal.App.5th at pp. 770-778 [same], disapproved on other grounds, *Mumin*, at p. 203.) But, as noted, his claim is not cognizable under section 1172.6. (See *People v. Burns*, *supra*, 95 Cal.App.5th at p. 865 ["Section 1172.6 does not create a right to a second appeal"].) Therefore, we conclude he failed to make a prima facie case for relief.

## DISPOSITION

The order denying the section 1172.6 petition is affirmed.

STONE, J.

We concur:

MARTINEZ, P. J.

SEGAL, J.

---

[5] We express no view on the merits of that petition.

15